JUDGE ROANE,
upon the whole . case, was for affirming the Chancellor’s decree.
JUDGE FEEMING.
The only material question in this case is, whether the deed from Jacob Peck and wife to the appellant Robert Harvey was, or was not, fraudulently obtained? In proof of which there are several strong badges and circumstances spread upon the record.
1. The • appellant’s going to the house of Peter Holm, where *Peck and his wife were on a visit to their daughter, with a deed ready prepared, with a commission to take the relinquishment of her right to the land in question; and two magistrates to take her privy examination, before any contract was made, or perhaps treated for.
2. The manifest inadequacy of the price of 4001. for the land, stated by the depositions to be worth from 2,500 to 3,000 pounds.
3. The extreme old age, weakness and imbecility of Peck and his wife; of whom the land was purchased for the above-mentioned trifling sum of 4001.; and,
4. The plying the old people (accustomed to intoxication) with ardent spirits, procured from the neighbourhood, by Harvey himself; before the business was completed; or, perhaps, before the negotiation had commenced.
An attempt has been made, however, to invalidate the testimony of Peter Holm and his wife, by whom the latter circumstance was proved: but their testimony respecting that matter is corroborated by two of the appellant’s most respectable witnesses, the magistrates who took the acknowledgment of Lydia Peck. Mr. Walker, in answer to a question put by the appellant, whether he saw one. or both of them drink freely, said, ‘ ‘I think they drank twice, but I did not discover that they drank deeply;” but they might have drank twice more, or oftener, without his observing them; as I do not suppose he was a spy upon their actions, nor 0 particular as to notice whether they drank deeply or not; nor do I think it material, as the crime and mischief lay in Harvey’s having procured the liquor, from the free use of which, it may be fairly presumed, they were under no restraint: and the circumstance of the liquor being sweetened would naturally produce a double effect; first, in disguising its strength ; and, secondly, would induce a more free and liberal use of it: and it is in evidence that they were put to bed, on account of intoxication, soon after the business was finished. The evidence of Peter Holm and his wife is strongly supported by that of Walker and Anderson, in another important part of it, which is, that Eydia Peck refused her assent to. the contract, “or to-sign the deed, unless Harvey would enter into an article to cancel the bargain, in case an instrument of writing she had executed to her son Jacob Peck some time ago-was sufficient authority to vest the 528 title of *said land in him; which the said Harvey did, and then she signed the deed.” Those are the express words in Walker’s deposition; and that of Anderson is much to the same effect.
1 see nothing to lessen the credit of Peter Holm’s evidence. His deposition consists chiefly in answers to a variety of interrogatories, put to him by the parties, which he seems to have answered with frankness and candour: several of them (had they been answered in the affirmative, would have been much in favour of the appellees) he professed to know nothing about. And when the question following was asked him, “do you remember of hearing the defendant insisting on your mother-in-law, Eydia Peck, to drink, and how often?” he answered, “I heard him ask her once.”
These circumstances in the testimony of Peter Holm and his wife, corroborated, in some of its material parts, by that of Walker and Anderson, two of the appellants’ principal witnesses, perfectly establishes its credibility with me. And I have no hesitation in saying that I think the decree a very just one, and therefore concur in the opinion that it be affirmed.
With respect to the decree of September, 1745, from Jacob Peck and wife to Benjamin Borden, it may be observed,
1. That the wife of Peck, in right of whom he claimed an interest in the said land, never relinquished her right to the same.
2. Neither Peck nor his wife (the latter of whom claimed a right to the 1,000 acres of land, on the waters of James River, under the will of Benjamin Borden, her father, the locality or identity of which had never been ascertained) were ever seised, or in possession thereof, and therefore could not convey the same to Benjamin Borden.
Decree affirmed.